**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff–Appellee,**

**v.**

**WHITE AND SON ENTERPRISES, a corporation, Defendant–Appellant.**

No. 88–7658.

United States Court of Appeals,
Eleventh Circuit.

Aug. 24, 1989.

Juliet G. St. John, Cullman, Ala., for defendant-appellant.

G. William Davenport, Sr. Trial Atty., E.E.O.C., Birmingham, Ala., Samuel A. Marcosson, U.S. E.E.O.C., Washington, D.C., for plaintiff-appellee.

Before CLARK and EDMONDSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

TUTTLE, Senior Circuit Judge:

This is an appeal from a judgment in favor of the Equal Employment Opportunity Commission (EEOC) in an action brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, as modified by the Equal Pay Act of 1963 (EPA), 29 U.S.C. § 206(d).

The EEOC sued on behalf of six women (the charging parties), former employees of defendant White & Son Enterprises, Inc. (White and Son). The EEOC alleged that White and Son had violated Title VII by discriminating against the charging parties on the basis of sex, violated the EPA by paying them less than male employees for jobs requiring equal work, skill and responsibility, and discharged them in retaliation for protesting their pay, in violation of both the FLSA and Title VII.

After a bench trial, the district court found that the defendant had acted willfully in paying unequal wages to its female employees and in discharging the women in retaliation for complaining about the unequal pay. The court permanently enjoined the defendant from further violations of the EPA and Title VII, ordered reinstatement of three of the charging parties and awarded damages.

## I. BACKGROUND

White and Son is an Alabama corporation which constructs trusses for use by the company in assembling chicken houses. The company is owned and run by Orvis White and his son, Ricky. The Whites also owned and operated Craftwood Colonial Designs, Inc. (Craftwood), which was a separate corporation but which had the same foreman as White and Son. That company engaged in making construction beams and mirror frames. Some employees shifted back and forth between the truss and Craftwood facilities as needed.

The construction of a truss involved three different tasks: operation of the truss saw to process lumber, assembly of the wood at the truss table into pre-set forms, and running of the hydraulic truss press, by operating controls, to assemble the truss.

Two of the charging parties were assigned to operate the truss saw while they were employed by defendant. They were paid $4.00 an hour. The men who replaced them once they no longer worked for appellant were paid $5.00 an hour. Only one woman was ever employed at the truss table, for less than one day. She was paid $4.00 an hour, whereas the men at the table started at $4.50 or $5.00 an hour. No woman was ever hired to run the truss press.

In the Craftwood operation, all of the jobs at issue here—sanding, staining, building beams and sawing lumber—required the same skill and level of responsibility. The charging parties performing those jobs earned $4.00 an hour, with the exception of Shirley Bryan, who had received a $.50 raise to $4.50 an hour after working for the company for seven months. Appellee contends that the men employed full-time in the Craftwood operation earned $4.50 or $5.00 an hour for performing the same work as the women.

On June 3, 1985, the truss table workers were given a $.50 per hour raise. When the charging parties learned of the pay increase, several of them met with Ricky White and the foreman to ask why they did not receive a raise as did the men and to request equal pay. Ricky White promised that he would discuss the matter with his father that evening. The next morning,

when Orvis White arrived, the women were waiting to speak to him. Orvis White asked the women if there was a problem, and they replied that there was. White then stated that if it was about a raise, there would be none, and that they could "take it or leave it." White instructed the company secretary to make out the women's final paychecks. The charging parties picked up the checks, leaving the premises immediately thereafter.

On June 27, 1985, the six women filed charges with the EEOC, which conducted an investigation and commenced the instant action in the Northern District of Alabama on June 2, 1987. On June 24, 1987, White and Son filed a motion to dismiss, which the court denied. Defendant then filed its answer on July 9, 1987, denying the allegations in the complaint and asserting the statute of limitations as an affirmative defense. On September 1, 1987, White and Son filed an amended answer to add the affirmative defense that four of the charging parties were not employees of White and Son. The EEOC moved to strike the amended answer pursuant to Rule 12(f), Fed.R.Civ.P., for failure to request leave of the court or to obtain plaintiff's written consent in accordance with Rule 15(a), Fed.R.Civ.P.[1] The district court granted plaintiff's motion to strike.

On Friday, November 6, 1987, three days before the trial began, when discovery was already completed and the pretrial order had been entered, defendant again moved to amend its answer, to raise the affirmative defenses provided by the Equal Pay Act and Title VII.[2] The district court denied the motion, and the case proceeded to

trial by the court. On June 28, 1988, the district court entered judgment for plaintiff, which the court modified as to damages on August 22, 1988.

## II. DISCUSSION

### A. *Discrimination Because of Sex*

The EPA prohibits wage discrimination on the basis of sex in section 206(d)(1), which provides in pertinent part:

> No employer ... shall discriminate ... between employees on the basis of sex by paying wages to employees ... at a rate less than the rate at which he pays wages to employees of the opposite sex ... for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex....

29 U.S.C. § 206(d)(1).

Under Title VII, it is an unlawful employment practice for an employer "to fail or refuse to hire or to discharge any individual, *or otherwise to discriminate* against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1) (emphasis added).[3] If the jurisdictional prerequisites of both the EPA and Title VII are satisfied, a violation of the EPA is also a violation of Title VII. 29 C.F.R. § 1620.27(a).

---

1. Under Rule 15, a pleading to which no responsive pleading is permitted may be amended within twenty days after the pleading is served. Otherwise the pleading may be amended "only by leave of the court or by written consent of the adverse party." Fed.R.Civ.P. 15(a).

2. Defendant sought to assert the affirmative defenses that its system of pay raises and rates was based on (a) seniority; (b) merit; (c) quantity or quality of production; and (d) other factors other than sex, namely prior work experience.

3. Under 42 U.S.C. § 2000e–2(h),

it shall not be an unlawful employment practice for an employer to apply different standards of compensation, or different terms, conditions, or privileges of employment pursuant to a bona fide seniority or merit system, or a system which measures earnings by quantity or quality of production.... It shall not be an unlawful employment practice ... for any employer to differentiate on the basis of sex in determining the amount of the wages or compensation paid or to be paid to employees ... if such differentiation is authorized by the provisions of section 206(d) of Title 29.

42 U.S.C. § 2000e–2(h).

■ In order to establish a prima facie case under the EPA, the plaintiff must show "that an employer pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.' " *Corning Glass Works v. Brennan*, 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1 (1974) (quoting 29 U.S.C. § 206(a)(1)). Plaintiff need only show discrimination in pay against an employee vis-a-vis one employee of the opposite sex. *Brock v. Georgia Southwestern College*, 765 F.2d 1026, 1033 n. 10 (11th Cir.1985). If, however, other appropriate "comparators," *i.e.*, employees doing substantially equal work, were wrongly excluded from the comparison by plaintiff, defendant must call them to the attention of the court. *Id.*

■ The EEOC alleged that the two women who operated the truss saw were paid less than men performing the identical job. In addition, plaintiff claimed that the charging parties working in the Craftwood operation were paid at a lower rate than men working full-time in Craftwood, performing similar jobs. Appellant contends, however, that appellee failed to establish a case of discrimination on the basis of sex. Appellant argues that wages were set according to an employee's experience in construction work, *i.e.*, a "factor other than sex," and productivity. 29 U.S.C. § 206(d)(1). Thus, appellant essentially raises on appeal the affirmative defenses the district court rejected in appellant's belated motion to amend its answer just before the trial commenced. The district court gave sufficient reasons for the denial from the bench, after hearing argument on

the motion. The court stated, addressing appellant's counsel:

> [T]he hornbook law is that affirmative defenses must be specifically pled. If this is an affirmative defense, you had a duty to plead it at least by the time of pre-trial.
>
> .    .    .    .    .
>
> [S]urely you don't contend that you're entitled to amend your answer up to and including the day of trial without any consideration of any possible prejudice that the other party may suffer.
>
> .    .    .    .    .
>
> [D]oesn't a party in an action have the right to rely on the pre-trial order and the other pleadings to determine … what the claims and defenses are?

The court did not abuse its discretion in ruling that appellant had waived its affirmative defenses under Fed.R.Civ.P. 8(c).[4]

■ The district court's determinations on plaintiff's claims are subject to review under the "clear error" standard. *Glenn v. General Motors Corp.*, 841 F.2d 1567, 1569 (11th Cir.), *cert. denied,* — U.S. —, 109 S.Ct. 378, 102 L.Ed.2d 367 (1988). The evidence supports the district court's finding that defendant paid the female employees less than full-time male employees for substantially similar work. The district court did not clearly err when it found that the two women who operated the truss saw, Melissa Aderholt and Florene Bartlett, were paid less than their male counterparts; even their replacements, who were men, were paid higher wages for the same work after these two charging parties left the company. Moreover, the court's finding that the job of large table saw operator is at least equal to a job on the truss table in terms of skill, effort and responsibility,

---

**4.** This Court has held that a defense of a bona fide seniority system under § 703(h) of Title VII, 42 U.S.C. § 2000e–2(h), is an affirmative defense, which must be expressly pleaded and included in the pretrial order or is waived. *Powers v. Ala. Dept. of Educ.*, 854 F.2d 1285, 1296 (11th Cir.1988) (citing *Jackson v. Seaboard Coast Line R. Co.*, 678 F.2d 992, 1012–13 (11th Cir.1982)), *cert. denied,* — U.S. —, 109 S.Ct. 3158, 104 L.Ed.2d 1021 (1989). In *Seaboard Coast Line,* the Court likened the bona fide

seniority system exemption to the exemptions found in the EPA, 29 U.S.C. § 206(d)(1) and incorporated by reference into § 703(h) of Title VII. *See supra* n. 3. The Supreme Court has considered these latter exemptions to be affirmative defenses. *County of Washington v. Gunther,* 452 U.S. 161, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981). With that characterization, the failure here of appellant to assert the defenses until three days before the trial served as a waiver.

making them substantially similar, is not clearly erroneous. The court viewed the videotape in evidence of the truss operations, heard the rebuttal testimony to such video, and considered the testimony of employees. As to Ms. Aderholt and Ms. Bartlett, therefore, plaintiff proved that their pay was less in a job which is substantially similar to the job held by the male employees, sufficiently making out an EPA claim.

The district court also found that male employees who were regularly assigned to work at Craftwood were paid more than female employees performing identical work. It is undisputed that all Craftwood jobs but one required equal skill and responsibility. Appellant insists that some male employees in Craftwood were paid less than the charging parties, $3.35 an hour, which defeats plaintiff's discrimination claim. Appellant declares, however, that students were generally the only employees hired at that level. Even though White and Son pays only students the minimum wage, it argues that no distinction should be made between full-time and part-time or student employees for the purposes of appellee's suit. We disagree.

The charging parties were entitled to compare their wage rate with that of the men who had precisely the same job status as the women had, *i.e.*, full-time, year-round employees. In fact, the regulations relating to the EPA state that the payment of different wages to temporary employees than to permanent employees is not necessarily a violation of the EPA, even though both types of employees perform equal work. 29 C.F.R. § 800.150. The students hired by appellant at $3.35 an hour could only work during the summer or part-time during the academic year. They evidently were not accorded the same status as the full-time employees, because appellant uniformly paid them only the minimum wage, until they became full-time employees. The record supports the district court's finding with respect to full-time employees. Appellant's practice of unequal pay to the charging parties for equal work performed under similar working conditions therefore constitutes prima facie a violation of the EPA.

Once plaintiff has established a prima facie case, defendant has the burden to justify the pay difference, based upon one of the four exceptions in the EPA. *Brock*, 765 F.2d at 1036. With such proof lacking here, however, due to defendant's waiver of its affirmative defenses, the prima facie case prevails.

Even if appellant were permitted to assert the defenses that (1) salary was based on prior experience; and (2) the pay raise was to reward superior production on the truss table, its arguments must fail. The district court did not clearly err in finding that White and Son had no written or objective system of setting wages. The evidence showed that, in general, appellant did not know what prior experience its employees possessed when they began working at White and Son. Moreover, Shirley Bryan trained male employees for various Craftwood jobs yet received a lower salary than they did; she had also been with the company longer than at least one man who received a raise before she did. As to the production defense, even assuming appellant rewarded the truss table employees with a pay increase for producing at a certain level, the pay inequities in the areas already mentioned could not be justified by claiming production quantity differed. Because we conclude that plaintiff proved discrimination under the EPA, a violation of Title VII is established a fortiori.

## B. *Retaliatory Discharge*

■ Section 15(a)(3) of the FLSA, 29 U.S.C. § 215(a)(3), makes it unlawful for any person "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee." Under Title VII, it is an unlawful employment practice for an employer to discriminate against any of his employees "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made

a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a).

Appellant contends that the district court erred in finding that Orvis White fired the charging parties. Appellant maintains that White gave the women an alternative: to take the current wage rate and continue working or to leave the company. Appellant further avers that, even if a discharge is found, it was not in retaliation for any of the acts specified in the FLSA; the charging parties had not filed a complaint, instituted or caused to be instituted any proceeding, testified, or served on an industry committee and were not about to testify in a proceeding or serve on an industry committee. *See* 29 U.S.C. § 215(a)(3). Appellant also contends that no violation occurred under Title VII, either, because the charging parties did not oppose "an unlawful employment practice." 42 U.S.C. 2000e–3(a). Furthermore, appellant asserts, Orvis White was not aware that the charging parties were protesting any alleged sex discrimination.

The record supports the district court's finding that Orvis White discharged the female production employees in retaliation for their opposition to unequal wages and to his denial of their request for a raise. The women had complained to Ricky White and to the foreman about the unequal pay. They came to work ready to speak to Orvis White. When Orvis entered the room in which the women were waiting, he apparently knew precisely why they wished to speak to him. White, according to his own testimony, told the women, "I ain't going to give you no raise." Immediately thereafter, he went into the office, turned to his secretary and instructed her to draw their paychecks.

The women were never given a viable alternative. To remain on the job meant to accept defendant's discriminatory practices, the very reason for their protest. By ordering that their paychecks be prepared and informing the women that the checks were ready to be picked up, Orvis White acknowledged that he would not tolerate

any complaints about unequal pay. According to the testimony of Wanda Evans, a friend of the Whites, Orvis White even told a group of people, the same week these events occurred, that when the foreman informed him that the women were angry White replied that he "will fire the whole ... bunch." Even though White never used the term "fired" when addressing the charging parties, they believed, drawing reasonable inferences from their employer's language and conduct, that they had no choice but to pick up their checks and leave. *Cf. N.L.R.B. v. Ridgeway Trucking Co.*, 622 F.2d 1222, 1224 (5th Cir.1980).

Moreover, even though the charging parties had not yet filed formal charges of discrimination with the EEOC, the discharge by appellant can still be retaliatory in nature. The charging parties did not perform an act that is explicitly listed in the FLSA's anti-retaliation provision; however, we conclude that the unofficial complaints expressed by the women to their employer about unequal pay constitute an assertion of rights protected under the statute. The FLSA in general is remedial in purpose. *See Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 597, 64 S.Ct. 698, 702, 88 L.Ed. 949 (1944). "For ... practical and other reasons," Congress sought to secure compliance with the substantive provisions of the labor statute by having "employees seeking to vindicate rights claimed to have been denied" lodge complaints or supply information to officials regarding allegedly substandard employment practices and conditions. *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 292, 80 S.Ct. 332, 335, 4 L.Ed.2d 323 (1960). The anti-retaliation provision of the FLSA was designed to prevent fear of economic retaliation by an employer against an employee who chose to voice such a grievance. *Id.* By giving a broad construction to the anti-retaliation provision to include the form of protest engaged in here by the charging parties, its purpose will be further promoted. *See also Love v. Re/Max of America*, 738 F.2d 383, 387 (10th Cir.1984) (anti-retaliation provision of FLSA applies to employee who

sent memorandum to employer requesting raise with copy of EPA attached and was fired within two hours).

Title VII prohibits an employer from discriminating against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e–3(a). There is sufficient evidence of retaliatory discharge to support the district judge's finding to that effect, under Title VII, also.[5] *See generally Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1136 (5th Cir. Unit A 1981), *cert. denied*, 455 U.S. 1000, 102 S.Ct. 1630, 71 L.Ed.2d 866 (1982).

We, therefore, affirm the district court's ruling that White and Son discharged the women employees in retaliation for their opposition to unequal wages because of their sex.

## C. *Damages*

### (1) Willfulness

■ Plaintiff has elected the damages remedy under the FLSA, pursuant to which liquidated damages are recoverable. This Court has said:

> An employer may avoid the mandatory nature of an award of liquidated damages if the court chooses not to make an award where the employer shows its actions were in good faith and shows it had reasonable grounds for believing that those actions did not violate the Equal Pay Act.

*Glenn v. General Motors Corp.*, 841 F.2d at 1573.

The district court held that White and Son acted willfully, the company's actions "were not taken in good faith," and "it lacked any reasonable grounds for believing that its actions did not violate the Equal Pay Act." Appellant has not offered sufficient evidence to establish that it acted in reasonable good faith. Orvis White even

testified that he made no effort to investigate the company's legal obligations with respect to employment matters. *See Reeves v. International Telephone and Telegraph Corp.*, 616 F.2d 1342, 1353 (5th Cir.1980) ("Good faith requires some duty to investigate potential liability. . . ."), *cert. denied*, 449 U.S. 1077, 101 S.Ct. 857, 66 L.Ed.2d 800 (1981). We, therefore, affirm the district court's finding of willfulness.

### (2) Interim Earnings

■ An employer who violates Section 6 of the EPA "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Because we affirm the trial court's finding that the charging parties were paid less than male employees for equal work, the charging parties are entitled to recover the additional amount they should have received had they been paid equally. In addition, the charging parties are entitled to liquidated damages in an amount equal to their compensation for underpayment.

For violations of Section 15(a)(3) of the FLSA, an employer "shall be liable for such legal or equitable relief as may be appropriate . . ., including without limitation employment, reinstatement, promotion and *the payment of wages lost and an additional equal amount as liquidated damages.*" 29 U.S.C. § 216(b) (emphasis added). The district court initially calculated damages by deducting the amount of interim earnings, for employment after the discharge from White and Son, from the total amount of back pay due, and doubling that amount to determine total damages of $187,486.52, which included liquidated damages. The court later modified its award, upon application by appellee, to an amount that did not include any deduction of inter-

---

5. Under the opposition clause of Title VII, it is not necessary that an employer actually have engaged in an unlawful employment practice; a case of retaliatory discharge can be established if it is shown that the employee simply had "a reasonable belief that the employer was engaged in unlawful employment practices." *Payne*, 654 F.2d at 1140. Here, the charging parties had a reasonable belief that appellant discriminated against them on the basis of sex, and appellant did in fact engage in unlawful employment practices.

im earnings. The amount in that judgment was $310,128. Appellee now concedes that a deduction for mitigation is in order with respect to back pay, but contends that liquidated damages should be computed based on gross back pay. This would amount to a judgment for $248,742.26.

The language of Section 216(b) plainly calls for a deduction of interim earnings from gross back pay allowable as "wages lost" due to a retaliatory discharge. Liquidated damages are then "an additional *equal* amount." That is, liquidated damages should equal net back pay.

Appellee argues that this method of computation has the effect of deducting interim earnings from the liquidated damages amount also, which is not justified since those damages are partly punitive. We acknowledge the punitive nature of liquidated damages, *see Morgado v. Birmingham–Jefferson County Civil Defense Corps.*, 706 F.2d 1184, 1189 (11th Cir.1983) ("the [EPA] itself allows expressly for damages that are more than compensatory"), *cert. denied,* 464 U.S. 1045, 104 S.Ct. 715, 79 L.Ed.2d 178 (1984). *Doubling* the amount of wages lost already pushes damages beyond the sphere of compensation, however, and suffices as a punishment for appellant's conduct.

The charging parties are, therefore, entitled to the amount they were underpaid from their date of hire until discharge, and an additional equal amount. They should also receive the wages they lost by reason of the discharge, calculated at the higher, "nondiscriminatory" rate, less interim earnings. That amount is then to be doubled. The total award would then amount to $187,356.52. Accordingly, we vacate the district court's judgment as to damages only and remand for recalculation of damages as described above.

AFFIRMED in part, VACATED in part and REMANDED.