**Kathy GARNER and Loulee
W. Karn, Plaintiffs,**

v.

**G.D. SEARLE PHARMACEUTICALS &
COMPANY; et al., Defendants.**

Civ. A. No. 90–T–688–N.

United States District Court,
M.D. Alabama, N.D.

Oct. 30, 1991.

Ann K. Norton, Robert L. Wiggins, Gordon, Silberman, Wiggins & Childs, P.C., Birmingham, Ala., for plaintiffs.

Lawrence B. Clark, Timothy Palmer, Alice W. Durkee, James Pennington, Lange, Simpson, Robinson & Somerville, Birmingham, Ala., for defendants.

## ORDER

MYRON H. THOMPSON, Chief Judge.

Plaintiffs Kathy W. Garner and Loulee W. Karn brought this lawsuit charging, among other things, that their former employer, defendant G.D. Searle Pharmaceuticals & Co., and former supervisor, defendant Joe Flanders, paid them less than male employees in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. §§ 2000e, et seq. (hereinafter referred to as "Title VII"), and the Equal Pay Act of 1963, 29 U.S.C.A. § 206(d) (hereinafter referred to as the "EPA"). This cause is now before the court on the plaintiffs' motion to provide notice of their EPA claim to similarly situated females, pursuant to certain EPA enforcement provisions contained in the Fair Labor Standards Act of 1938, 29 U.S.C.A. §§ 201, et seq. (hereinafter referred to as the "FLSA"). For the reasons that follow, the court concludes that the motion should be granted.

## I.

Searle pays its medical sales representatives according to five pay grades. Within each grade there is a salary range which changes from year to year. The starting pay grade for sales representatives is 3, and the highest salary level is 7. Progression from one grade to the next is not governed by precise requirements. An employee's starting salary within pay-grade 3 is determined by the district manager responsible for the employee's district and must be approved by the regional manager. All salary increases that an employee receives subsequently, either for merit or promotion, are a percentage of the employee's original salary.

*Plaintiff Kathy Garner:* On January 2, 1987, Garner began working for Searle in the company's Alabama district as a Medical Sales Representative I, pay-grade 3. Prior to working for Searle, she had spent

three years working as a field salesperson at Delta Foremost Chemical Company. At Searle, Garner's responsibilities included visiting doctors in the Huntsville area to promote the prescription of Searle's pharmaceutical products. Her starting salary was $28,500.00 and, in June 1989, she received a $1,500.00 increase, for a final salary of $30,000.00 at the time of her discharge on January 1990. After hiring Garner, Searle hired 24 males as Medical Sales Representatives at salaries higher than Garner's starting salary. There is no significant difference between the jobs performed by these men and the job performed by Garner.

*Plaintiff Loulee W. Karn:* On December 22, 1987, Karn began working for Searle as a Medical Sales Representative I, pay grade 3, at a salary of $32,000.00. Karn's qualifications at that time included four years in pharmaceutical sales, a B.S.N. degree, and clinical experience in nursing. Karn was assigned to a territory covering Montgomery, Alabama, and the surrounding area. After hiring Karn, Searle hired 16 males as Medical Sales Representatives at salaries higher than Karn's starting salary. All of these men were hired to perform the same job as Ms. Karn.

Garner and Karn contend that other current and former female sales representatives at Searle have suffered similar wage discrimination on the basis of their sex. Garner and Karn have filed a motion seeking the court's assistance in notifying other females of the existence of this lawsuit in order to give other "similarly situated" females the opportunity to join the action. Defendants oppose the motion on two grounds: first, that Garner and Karn have not brought the required "collective action"; and second, that, even if this suit has been brought as a collective action, court-authorized notice is not appropriate.

## II.

### A.

The EPA provides that an employer shall not discriminate between employees on the basis of sex by paying lower wages to employees of one sex "for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions...." 29 U.S.C.A. § 206(d)(1). The act recognizes four legitimate explanations for a wage differential between workers of opposite sexes which will not subject an employer to liability: "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." *Id.*

■ To establish a prima facie violation of the act, a plaintiff must show "that an employer pays different wages to employees of opposite sex 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" *Corning Glass Works v. Brennan*, 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1 (1974) (quoting 29 U.S.C. § 206(d)(1)). The plaintiff is not required to demonstrate that males as a class are paid higher wages than female employees, but only that there is "discrimination in pay against an employee vis-a-vis one employee of the opposite sex." *EEOC v. White and Son Enters.*, 881 F.2d 1006, 1009 (11th Cir.1989); *see also Mitchell v. Jefferson County Bd. of Educ.*, 936 F.2d 539, 547 (11th Cir.1991). The plaintiff is also not required to prove that the employer acted with discriminatory intent. *Mitchell*, 936 F.2d at 547. Here, Garner and Karn have already presented prima facie evidence of EPA violations with regard to their own individual claims and these claims have survived a motion for summary judgment. They now seek to expand their action to include other "similarly situated" persons.

■ Section 216(b) of the FLSA authorizes a plaintiff seeking relief under the EPA to bring a "collective action" on behalf of similarly situated persons subject to the requirement that any person who wishes to become a part of the collective action must file a written consent in the court in which such action is brought. 29

U.S.C.A. § 216(b).[1]  *See, e.g., Montalvo v. Tower Life Bldg.*, 426 F.2d 1135 (5th Cir. 1970);[2]  *see also Schmidt v. Fuller Brush Co.*, 527 F.2d 532 (8th Cir.1975). This "opt-in" requirement distinguishes § 216(b) collective actions from class actions brought under Rule 23 of the Federal Rules of Civil Procedure. Rule 23 provides that, in the case of a class certified pursuant to subsection (b)(1) or (b)(2), all class members are bound by the court's decision irrespective of their desires and that, in the case of a class certified pursuant to subsection (b)(3), they are bound by the court's decision unless a class member notifies the court prior to resolution of the case that she desires to opt out of the class. Under § 216(b), in contrast, a person is not considered a member of the "collective action" and will not be bound by or benefit from the court's judgment unless the person has filed a written consent with the court and thereby affirmatively "opted in" to the suit. *La-Chapelle v. Owens–Illinois, Inc.*, 513 F.2d 286, 288 (5th Cir.1975). Because these opposing requirements of a Rule 23 class action and a § 216(b) collective action are "irreconcilable," *id.*, a plaintiff may not bring a Rule 23 class action under § 216(b). *Id.* at 287; *accord Schmidt v. Fuller Brush Co.*, 527 F.2d 532 (8th Cir.1975).

■ Unfortunately, § 216(b) gives little guidance as to the exact nature of a "collective action" or the appropriate procedure for gathering the necessary written consents. *Accord Sperling v. Hoffmann–La-Roche, Inc.*, 118 F.R.D. 392 (D.N.J.1988) (finding statute and legislative history "wholly silent" on issue of notice and court involvement), *aff'd in part and dismissed in part*, 862 F.2d 439 (3rd Cir.1989), *aff'd*, 493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480

(1989); *Shushan v. University of Colo.*, 132 F.R.D. 263, 266 (D.Colo.1990) (finding statute "vague" and legislative history "equally unilluminating"). Two things are, however, evident. On the one hand, § 216(b) does not require parties to obtain judicial approval before seeking to locate other "similarly situated" persons; although the court would, of course, consider challenges to the validity of any consents filed, it is not the court's role to prohibit plaintiffs from attempting to gather these consents. On the other hand, the act does not prohibit judicial involvement; the court may assist the plaintiffs in giving notice, as long as that assistance is appropriate. Here, the plaintiffs seek judicial involvement.

**B.**

■ Before considering the question of judicial oversight in the notification process, the court will address Searle's claim that the plaintiffs' amended complaint does not adequately establish their intent to pursue a collective action. Plaintiffs' amended complaint includes the claim that "defendants have wilfully violated the Equal Pay Act of 1963, ... by paying women less than men for performing jobs of equal skill, responsibility and effort under similar working conditions." Plaintiffs similarly claim that "males were hired [by defendant] as sales representatives and were paid more than Garner and Karn and other female sales representatives for performing jobs of equal skill, responsibility and effort under similar working conditions." These allegations are sufficient to encompass a collective action. Searle notes, however, that plaintiffs failed to list additional current or former employees as parties to

---

1. The requirement that employees file a written consent with the court in order to participate in the suit was added to the FLSA in 1947 by the Portal to Portal Act, § 5(a), 61 Stat. 87, 88 (1947) (current version at 29 U.S.C.A. § 216(b) (1965)). Previously, an employee bringing a collective action under the FLSA had not been required to identify the other employees represented, with the result that a defendant could be surprised by their testimony or evidence at trial. *Allen v. Atlantic Richfield Co.*, 724 F.2d 1131, 1134 (5th Cir.1984). The purpose of the new requirement was "to make the members of the

class of unnamed plaintiffs who wished to participate in, and be bound by, the action identify themselves for the benefit of the defendant." *Id.* at 1135.

2. In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

this litigation in the title of the action. Plaintiffs styled their lawsuit properly because, under § 216(b), a plaintiff is prohibited from listing any other persons as parties to the litigation until written consent has been obtained from each person. Moreover, the statute does not require, and courts have not required, that plaintiffs obtain such written consents prior to initiating a suit under the EPA. *See* 29 U.S.C.A. § 216(b) (particular time within which consents must be filed not mentioned); *Hoffmann–LaRoche, Inc. v. Sperling,* 493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989) (implicitly permitting notifications to be mailed and consents received after commencement of suit). The court finds Searle's objection to the language of the amended complaint is without merit.

## C.

■ In *Hoffmann–LaRoche, Inc. v. Sperling,* 493 U.S. 165, 169, 110 S.Ct. 482, 486, 107 L.Ed.2d 480 (1989), after observing that it is not only clear that trial courts have authority to participate in the notification process but that, indeed, because consents from other employees must be filed with the court, some form of court involvement is "inevitable," the Supreme Court clarified the extent of the district court's authority to facilitate § 216(b) notice. The Court found that early participation by the district court in the notice process serves a number of important goals. Judicial oversight of the contents of notice protects against misleading communications and misuse of the class device, *id.* at 171, 110 S.Ct. at 487, and enables the court to resolve disputes about the contents of the notice before it is sent out. *Id.* District court involvement also ensures that all potential plaintiffs receive timely notice of a pending suit, and thus prevents the proliferation of multiple individual suits arising from the same allegedly discriminatory activity. *Id.* at 169, 171, 110 S.Ct. at 486, 487. Also by setting a cut-off date for the receipt of consents, the court can expedite resolution of the action. *Id.* at 171, 110

S.Ct. at 487. For all of these reasons, the Court concluded that a district court "ha[s] discretion, in appropriate cases, ... [to] facilitat[e] notice to potential plaintiffs" in actions brought under § 216(b). *Id.* at 169, 171, 110 S.Ct. at 486, 487. Similarly and in this vein, the Eleventh Circuit Court of Appeals has stated that "the 'broad remedial purpose of the Act' is best served if the district court is deemed to have the power to give such notice to other potential members of the plaintiff class to 'opt-in' if they so desire." *Dybach v. State of Florida Department of Corrections,* 942 F.2d 1562, 1567 (11th Cir.1991) (internal citation omitted). The court directed that, "[b]efore determining to exercise such power ..., the district court should satisfy itself that there are other employees ... who desire to 'opt-in' and who are 'similarly situated' with regard to their job requirements and with regard to their pay provisions." *Id.* at 1567–68. The question before this court, therefore, is whether it is appropriate for the court to become involved in the notification process in this case.

Garner and Karn have offered adequate evidence in support of their request for court-approved class notification. They have identified 40 female sales representatives hired into Searle's Southern Region since 1976 who could each point to at least one male hired for the same position and pay grade in the same year who received a higher salary. Each of these women could make out a prima facie violation of the act, as each appears to have been the victim of "discrimination in pay ... vis-a-vis one employee of the opposite sex." *EEOC v. White and Son Enters.,* 881 F.2d 1006, 1009 (11th Cir.1989). The court finds that this evidence sufficiently indicates that there are other "similarly situated" females who may decide to opt-in if notified of this action. To impose a strict standard of proof on the plaintiffs at this stage would unnecessarily hinder the development of collective actions and would undermine the "broad remedial goals" of the anti-discrimination provisions of the FLSA. *Hoffmann,* 493 U.S. at 173, 110 S.Ct. at

488.[3]

Searle denies that any disparity between individual employees is the result of sex-based discrimination. Searle may well be able to demonstrate that these disparities are the legitimate result of a salary system based on merit, seniority, quantity or quality of production, or on some "other factor other than sex." 29 U.S.C.A. § 206(d)(1). However, such an explanation would operate to defeat the suit ultimately; it does not detract from the fact that Garner and Karn have established a prima facie case. *Brock v. Georgia Southwestern College*, 765 F.2d 1026, 1034 (11th Cir.1985).[4]

Searle has also offered objections to the proposed notification on the grounds that the evidence fails to substantiate the plaintiffs' claims of class-wide wage discrimination. Searle urges that a review of their payroll indicates that the average starting salary of women hired in the Southern region is higher than that of men in the same region. In addition, Searle notes that the top five highest salaries paid since 1985 were all received by female employees, as were seven of the top ten salaries. Searle contends that, in light of figures such as these, their wage scheme cannot be the subject of an EPA attack. Information about overall wage comparisons would be highly relevant in a class action brought under Title VII where a plaintiff sought to establish that a challenged employment practice has a "disparate impact" on a large group of persons.[5] *See, e.g., Dothard v. Rawlinson*, 433 U.S. 321, 97 S.Ct. 2720, 53 L.Ed.2d 786 (1977). In a disparate impact case, "statistical proof can alone make out a prima facie case," *Ward's Cove Packing Co. v. Atonio*, 490 U.S. 642, 650, 109 S.Ct. 2115, 2121, 104 L.Ed.2d 733 (1989), and the plaintiff's case may succeed or fail on the strength of their statistics. *E.g., Hazelwood School Dist. v. United States*, 433 U.S. 299, 307, 97 S.Ct. 2736, 2741, 53 L.Ed.2d 768 (1977) (identifying statistics as "an important source of proof in employment discrimination cases"); *Wilkins v. University of Houston*, 654 F.2d 388, 401–02 (5th Cir.1981) (plaintiff's claim rejected on grounds that statistical evidence was inadequate), *cert. denied*, 459 U.S. 822, 103 S.Ct. 51, 74 L.Ed.2d 57 (1982). Similarly, in a Title VII "disparate treatment" case, the Supreme Court has held that an employer's proof that her work force was racially balanced or contained a disproportionately high percentage of minority employees "is not wholly irrelevant" to the issue of intent, although it is not "sufficient to *conclusively* demonstrate that [the employer]'s actions were not discriminatorily motivated." *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 580, 98 S.Ct. 2943, 2951, 57 L.Ed.2d 957 (1978).

In a representative suit under the EPA, however, plaintiffs are not required to establish that the entire class of females has been victimized, nor are they required to prove discriminatory intent. *Mitchell v. Jefferson County Bd. of Educ.*, 936 F.2d 539, 547 (11th Cir.1991). Rather, to make a prima facie showing of a violation, the plaintiffs are simply required to show that, in the case of each "similarly situated" person, "the employer pays unequal wages for equal work" on the basis of sex. *Id.; Price v. Lockheed Space Operations*, 856 F.2d 1503, 1505 (11th Cir.1988).

---

**3.** It is instructive to note that plaintiffs seeking class certification under the stricter demands of Rule 23 are not required to prove the likelihood of success on the merits before requesting certification. *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718 (11th Cir.1987), *cert. denied*, 485 U.S. 959, 108 S.Ct. 1221, 99 L.Ed.2d 421 (1988).

**4.** At the hearing on plaintiffs' motion for class notification, both parties chose to address the extent to which "market force" considerations influence Searle's salary determinations and the legitimacy of this factor under the act. The court is not required, nor would it be well-advised, to adjudicate this case on its merits before resolving the issue of class notification. A primary purpose of notification is to locate other similarly situated employees who may wish to bring their claims to the court's attention *before* this litigation is resolved.

**5.** "[W]hile disparate-*treatment* cases focus on the way in which an individual has been treated, disparate-*impact* cases are concerned with the protected group." *Connecticut v. Teal*, 457 U.S. 440, 457, 102 S.Ct. 2525, 2536, 73 L.Ed.2d 130 (1982) (Powell, J., dissenting).

# 424

For the above reasons, and in keeping with the "broad remedial goal" of the anti-discrimination provisions of the FLSA, *Hoffmann,* 493 U.S. at 173, 110 S.Ct. at 488, the court holds that plaintiffs should be given the opportunity to give notice of this lawsuit to other females who may have similar claims. However, in order to preserve the substance and appearance of judicial impartiality, *id.* at 173, 110 U.S. at 488, the notification must include a clear statement that the notification does not represent court endorsement of the merits of the action.

Accordingly, it is ORDERED:

(1) That the plaintiffs' motion to provide notice, filed June 17, 1991, is granted; and

(2) That counsel for the plaintiffs, after consulting with counsel for defendants, shall submit to the court by November 12, 1991, a plan for providing the requested notice of this collective action to similarly situated persons.

It is further ORDERED that this cause is referred to United States Magistrate Judge Charles S. Coody with regard to the development of a plan for providing the requested notice.

DONE, this the 30th day of October, 1991.