**Darryl HENDERSON, Plaintiff,**

v.

**CITY OF GRANTVILLE, GEORGIA, Defendant.**

**Civil Action No. 3:13–CV–87–TCB.**

United States District Court,
N.D. Georgia,
Newnan Division.

Signed Aug. 14, 2014.

---

41. *Mizzaro*, 544 F.3d at 1239.

42. *See id.* at 1251–54.

Andrew Yancey Coffman, Parks Chesin & Walbert, Atlanta, GA, for Plaintiff.

Sammie Mark Mitchell, McKee & Mitchell, LLC, Newnan, GA, for Defendant.

## ORDER

TIMOTHY C. BATTEN, SR., District Judge.

This wage-and-hour case comes before the Court on the motion for summary

judgment filed by Defendant City of Grantville, Georgia.

## I. Background

Plaintiff Darryl Henderson alleges that the City retaliated against him in violation of the Fair Labor Standards Act. On May 7, 2012, Henderson applied to serve as a reserve police officer with the City. Reserve officers are not paid. Sometime after May 7, Henderson was selected as a reserve officer; shortly after his selection, the City lost several full-time police officers. As a result, the City converted some of the reserve officers, including Henderson, to paid, part-time officers.

On December 14, 2012, Henderson missed a shift that he was scheduled to work. He made up the shift on December 17 despite not being scheduled for a shift that day. One of Henderson's direct supervisors, Dustin Bulcher, took issue with the missed shift and unauthorized make-up shift. In consultation with Doug Jordan, the chief of police, Bulcher altered Henderson's time entries by deducting the unauthorized hours. When Henderson received the corresponding pay stub, he saw that he was not paid for the hours he worked during the unauthorized shift. On December 25, Henderson complained orally to Bulcher about the altered entries and missing pay. On the same day, Henderson also complained to Jordan, who told Henderson that the city manager had authorized docking his pay because he worked without authorization. On January 3, 2013, Henderson discussed the issue with the city manager, who is the ultimate decision-maker with respect to termination decisions.

On January 5, 2013, Henderson worked his last paid shift. On January 6, he was told not to report for his scheduled shift, to turn in his uniform and badge, and that he was suspended. Henderson has not worked for the police department since.

On January 10, 2013, Henderson filed a written complaint with the city manager, alleging that he had not been paid for the hours he worked during the unauthorized shift in December 2012. Sometime in late 2012 or early 2013, Henderson also filed a similar complaint with the U.S. Department of Labor. The City did not know about the DOL complaint until April 29, 2013, when it received a letter from the DOL stating that Henderson had not received $110.80 in wages. The City mailed Henderson a check in this amount, but he never cashed the check.

On May 23, 2013, Henderson filed this action seeking payment of the unpaid wages and alleging retaliation for complaining about it. He avers that the City retaliated against him by refusing to schedule him for any additional shifts. The parties have settled Henderson's unpaid-wage claim. All that remains is the retaliation claim. The City now moves for summary judgment.

## II. Legal Standard

### A. Summary Judgment

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R.CIV.P. 56(a). There is a "genuine" dispute as to a material fact if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *FindWhat Investor Grp. v. FindWhat.com,* 658 F.3d 1282, 1307 (11th Cir.2011) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). In making this determination, however, "a court may not weigh conflicting evidence or make credibility determinations of its own." *Id.* Instead, the court must "view all of the evidence in the light

most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Id.*

"The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact." *Id.* (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). If the moving party would have the burden of proof at trial, that party "must show *affirmatively* the absence of a genuine issue of material fact: it 'must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial.'" *United States v. Four Parcels of Real Prop.,* 941 F.2d 1428, 1438 (11th Cir.1991) (quoting *Celotex,* 477 U.S. at 331, 106 S.Ct. 2548). "If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, 'come[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact.'" *Id.* (quoting *Celotex,* 477 U.S. at 331, 106 S.Ct. 2548).

### B. FLSA Retaliation

■ The FLSA prohibits retaliation against those who assert their rights under the statute. *See* 29 U.S.C. § 215(a)(3). When, as here, a plaintiff does not adduce direct evidence of retaliation, his claim is evaluated under the burden-shifting framework common to employment-discrimination cases. *See Wolf v. Coca–Cola Co.,* 200 F.3d 1337, 1342–43 (11th Cir. 2000). Under that framework, the plaintiff must first establish a prima facie case of retaliation by showing that "(1) [ ]he engaged in activity protected under [the] act; (2)[ ]he subsequently suffered adverse action by the employer; and (3) a causal connection existed between the employee's activity and the adverse action." *Id.* In response, the burden of production shifts to the employer, who must articulate a

nonretaliatory reason for the adverse action. If the employer does so, the plaintiff can then show that the employer's explanation is pretextual. *Id.* at 1343. Ultimately, the plaintiff must prove that the adverse action would not have been taken "but for" the fact that he engaged in protected activity. *Id.*

### III. Analysis

The City first argues that Henderson cannot establish a prima facie case of retaliation. It disputes all three elements. And even if Henderson could establish a prima facie case, the City next argues that he cannot show that its nonretaliatory reasons are pretextual.

### A. Prima Facie Case

Henderson has established a prima facie case of retaliation.

■ *First,* he engaged in protected activity. The City suggests that his only protected activity was the formal, written complaint he made on January 10. Not so. Henderson orally complained to his supervisors about non-payment of wages as early as December 25. He continued to complain orally, doing so at least three times to three different supervisors before ultimately filing written complaints.

■ Unofficial, oral complaints are protected activity under the FLSA. *EEOC v. White & Son Enters.,* 881 F.2d 1006, 1011 (11th Cir.1989); *see also Kasten v. Saint–Gobain Performance Plastics Corp.,* —— U.S. ——, 131 S.Ct. 1325, 1335, 179 L.Ed.2d 379 (2011) (holding that the phrase "filed any complaint" in the FLSA's anti-retaliation provision encompasses "oral complaints, as well as ... written ones," as long as the complaint is "sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of

rights protected by the statute and a call for their protection").

 *Second*, he suffered an adverse employment action. The City reasons that because Henderson has not been terminated, he has suffered no adverse action. Again: not so. Adverse employment actions are not limited to "ultimate employment decisions, such as the ·decision to discharge an employee." *Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 716 (11th Cir.2002) (citing *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir.1998)). Conduct "falling short of an ultimate employment decision may still be cognizable ... if it reaches 'some threshold level of substantiality.'" *Id.* (quoting *Wideman*, 141 F.3d at 1456). "The relevant inquiry is whether an employer's actions likely would have 'dissuaded a reasonable worker from making or supporting a charge' against the employer." *Johnson v. Advertiser Co.*, 778 F.Supp.2d 1270, 1278–79 (M.D.Ala.2011) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, ˙548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006)).

 The City admits that Henderson has not worked for the City since January 2013. That is, his hours have been cut to zero. "A reduction in an employee's hours, which reduces the employee's take-home pay, qualifies as a tangible employment action." *Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227, 1231 (11th Cir.2006) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); *Gupta*

*v. Fla. Bd. of Regents*, 212 F.3d 571, 587 (11th Cir.2000)).

 *Third*, he has established a causal connection between his protected activity and the adverse employment action. In general, "close temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection." *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000).[1] To establish a causal connection, the temporal proximity must be "very close." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir.2007) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001)) (internal quotation marks omitted).

The temporal proximity here is very close. Henderson first complained about unpaid wages on December 25. He was told not to report and informed that he was suspended on January 6. At the most, the protected conduct and the adverse action were separated by twelve days. That is close enough to raise an inference of causation. *See, e.g., Entrekin v. City of Panama City Fla.*, 376 Fed.Appx. 987, 997 (11th Cir.2010) (holding that a period of "just over two weeks" was close enough to show a causal connection); *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir.1999) (seven weeks); *Lawson v. Plantation Gen. Hosp., L.P.*, 704 F.Supp.2d 1254, 1271 (S.D.Fla.2010) (two weeks); *Cobb v. Syniverse Techs., Inc.*, 359 F.Supp.2d 1287, 1290 (M.D.Fla.2005) (thirteen days).

---

1. There is an exception to this general rule: "temporal proximity alone is insufficient to create a genuine issue of fact as to causal connection where there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct." *Id.* (citing *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1355–56 (11th Cir.1999)). This exception is irrelevant here because the City does not contend that any decision-makers were unaware that Henderson had been complaining about unpaid wages.

### B. Nonretaliatory Reasons and Pretext

 Henderson has made out a prima facie case of retaliation. In response, the City must proffer one or more nonretaliatory reasons for its adverse action. In its motion for summary judgment, it insists that it eliminated Henderson's hours because it was "able to fill all its allotted full time positions, and therefore no longer ha[d] a need to use part time officers on a regular and consistent basis." In other words, the City says that it hired Henderson as a fill-in, part-time officer only because it was short on full-time officers. And once it hired a full complement of full-time officers, it no longer needed the services of part-time fill-ins like Henderson, so it eliminated them.

Henderson rebuts this reason head-on. He points to Eric Mischel, who was the only other part-time police officer working for the City at the relevant time. Henderson adduces evidence that, contrary to the City's explanation that it eliminated all part-timers, Mischel continued to work for the City long after Henderson was suspended.

In his statement of material facts, Henderson states that Mischel has "*never* been taken off the schedule and continues to work as a part-time police officer," and that the City's payroll records "demonstrate that [Mischel] has consistently worked his schedule as a part-time officer." [37] ¶¶ 27, 29. In response, the City responds with a curt "denied." [43] ¶¶ 27, 29. Such general denials are not acceptable responses under this Court's local rules. *See* LR 56.1(B)(3), NDGa.

Nonconformity with the local rules aside, a dispute of fact exists as to whether Mischel continued to work as a part-time officer after Henderson's hours were eliminated; the probative evidence is in conflict.

For its part, the City offers the affidavit of Douglas Jordan, the chief of police, who testified that Mischel "continued to work until February 2, 2013," but "did not appear on the March, 2013" work schedule, and "is not currently working any shifts" for the police department. That testimony may be true, but Jordan's careful phrasing elides the central question: did Mischel continue to work after Henderson stopped working? Read carefully, Jordan's testimony amounts only to this: Mischel did not appear on the March 2013 work schedule, and he was not currently working any shifts. What Jordan did not say was that Mischel did not work any shifts after Henderson's hours were eliminated. Mischel could have worked in April, he could have worked in May, and he could have worked in June before Jordan swore his affidavit on June 12. None of that would contradict Jordan's carefully crafted statements.

Indeed, Henderson adduces evidence showing that Mischel worked as a part-time officer for almost nine months after his own hours were eliminated. In discovery, Henderson received a copy of the City's personnel and pay records, which appear to show that Mischel was paid for hours worked as late as October 2013. And in a deposition, Jordan admitted that those records indicated that Mischel worked in February, March, April, May, June, July and August of 2013, and worked a part-time schedule at least through October 2013. [62] at 61.[2]

---

2. Jordan's deposition testimony that Mischel worked in March 2013 may appear to contradict his affidavit testimony. But again, notice the bravura display of lawyerly precision in Jordan's affidavit. He testified only that Mischel "did not appear on the March, 2013 schedule." That does not mean that he did not work in March 2013; it means only that he was not on the schedule. Mischel could have worked as a last-minute substitute for an

This conflicting evidence creates a factual dispute about whether Mischel continued to work after Henderson's hours were eliminated. And because the City's nonretaliatory explanation depends on the fact that all part-timers were eliminated, a dispute about that fact raises a jury question as to whether the City's explanation is pretextual. *See Kragor v. Takeda Pharm. Am., Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012) (explaining that a plaintiff can show pretext "by showing that the employer's proffered explanation is unworthy of credence" (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)) (internal quotation marks omitted)). In short, the City explained that it eliminated all part-timers once it no longer needed their services. But Henderson has shown that that explanation is unworthy of credence by adducing evidence that the City actually did continue giving hours to another part-timer, just not to him. He has shown pretext.

Perhaps sensing that Henderson has undermined its nonretaliatory reason, in its reply brief the City has changed course. It admits that Mischel continued working after Henderson's hours were eliminated. *See* [42] at 9. But the City, for the first time, attempts to distinguish Mischel from Henderson and to explain its decision to continue giving hours to the former and not the latter. The City advances a litany of reasons for that decision: Henderson has physical limitations that "impact[ed] his effectiveness as a police officer," whereas Mischel had no "physical infirmities"; Mischel had previously served as a police officer for various municipalities, had several law-enforcement certifications, and lived closer to the City, whereas

Henderson had none of these things going for him.

As an initial matter, the Court does not consider arguments raised for the first time, as this one was, in a reply brief. *Rindfleisch v. Gentiva Health Servs., Inc.*, 22 F.Supp.3d 1295, 1301, No. 1:10-cv-3288-SCJ, 2014 WL 2002834, at *3 (N.D.Ga. Apr. 18, 2014) (citing *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir.2005)).

Even if the Court were to consider this late-arriving argument, it would not change the result. That is because the City has now advanced two shifting and wholly contradictory reasons for its adverse action. First, the City suggested that it eliminated all part-time officers, including Henderson. When Henderson adduced evidence undermining that suggestion—by showing that another part-time officer remained on the force—the City articulated a second reason: the other officer was a better employee than Henderson, so he remained.

The City has failed to "clearly and consistently" articulate the reason for its adverse action; that alone "may serve as evidence of pretext." *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1298 (11th Cir.2006) (citing *Wascura v. City of S. Miami*, 257 F.3d 1238, 1245–46 (11th Cir.2001); *Donnellon v. Fruehauf Corp.*, 794 F.2d 598, 601–02 (11th Cir. 1986)). By offering shifting reasons for its adverse action, the City has undermined its own credibility and created a dispute as to pretext. *See Bechtel Constr. Co. v. Sec'y of Labor*, 50 F.3d 926, 935 (11th Cir.1995).

█ This is not to say that an employer cannot offer several complementary reasons for an adverse action. *See Pate v.*

---

absent officer or for some other unscheduled reason. Jordan's two statements thus are not

technically contradictory.

*Chilton Cnty. Bd. of Educ.,* 853 F.Supp.2d 1117, 1133–34 (M.D.Ala.2012). For instance, an employer may begin by insisting that it terminated an employee due to absenteeism, and then later add that the employee was also violating work rules. Those reasons may be shifting in a technical sense, but they are not in conflict; the second merely adds to the first. *See id.* at 1134. But if an employer's reasons "plainly contradict" each other or are "mutually exclusive," its credibility is undermined and pretext can be shown. *Id.*

Just so here. The City initially insisted that it eliminated Henderson's hours because it got rid of all part-timers. After Henderson cast doubt on that explanation, the City turned 180 degrees and said that, actually, it did continue to employ another part-time officer, but only because that officer was a better employee than Henderson. Those two reasons are not complementary or supplemental; they flatly contradict one another. Either the City cast off all its part-time officers or it did not; both cannot be true.

By offering two contradictory explanations, the City has undermined its credibility. *See Cleveland v. Home Shopping Network, Inc.,* 369 F.3d 1189, 1194 (11th Cir.2004) (explaining that a witness's shifting reasons undermined his credibility and demonstrated that the employer's explanations were pretextual). That suffices to raise a jury question as to whether its explanations are pretextual.

## IV. Conclusion

Defendant's motion for summary judgment [62] is DENIED. The parties are DIRECTED to file a proposed consolidated pretrial order in accordance with Local Rule 16.4 on or before September 15, 2014.