Jacqueline DAVIS and Barbara Green, Plaintiffs,

v.

CHAROEN POKPHAND (USA), INC., Defendant.

Civil Action No. 02–T–1029–N.

United States District Court, M.D. Alabama, Northern Division.

Feb. 11, 2004.

Jere L. Beasley, Wilson Daniel Miles, III, Roman Ashley Shaul, Beasley, Allen, Crow, Methvin, Portis & Miles, PC, Montgomery, AL, for plaintiffs.

J. Frederic Ingram, Marcel L. Debruge, Ashley H. Hattaway, Ronald Wayne Flowers, Jr., Burr & Forman, LLP, Birmingham, AL, Joel P. Smith, Jr., Williams, Potthoff, Williams & Smith, LLC, Eufaula, AL, J. Patrick Logan, Johnston, Barton, Proctor & Powell, LLP, Birmingham, AL, defendant.

## ORDER

MYRON H. THOMPSON, District Judge.

Plaintiffs Jacqueline Davis and Barbara Green bring this action under the Fair Labor Standards Act (FLSA), 29 U.S.C.A. §§ 201–219, on behalf of themselves and others similarly situated, alleging that their employer, defendant Charoen Pokphand (USA), Inc., violated the FLSA by failing to pay them overtime wages for work over 40 hours per week. The jurisdiction of the court is properly invoked pursuant to 29 U.S.C.A. §§ 216(b) and 28 U.S.C.A. § 1331. In a separate order issued this date, the court grants in part and denies in part Pokphand's motions for summary judgment. *Davis v. Charoen Pokphand (USA), Inc.,* 302 F.Supp.2d 1314, 2004 WL 303127 (M.D.Ala.2004). This matter is now before the court on plaintiffs' motion to facilitate class notice pursuant to 29 U.S.C.A. § 216(b). For the reasons that follow, the court will deny plaintiffs' motion.

## I. BACKGROUND[1]

Plaintiffs are employed at Pokphand's chicken-processing plant located in Baker Hill, Alabama. Plaintiffs allege that Pokphand failed to compensate them for time spent donning and doffing clothing and protective gear prior to the beginning of their shifts, for time spent completing work tasks prior to their shifts, and for time spent washing up and donning and doffing clothing and protective gear during their unpaid breaks.

*Plaintiff Davis:* Davis has held three positions at Pokphand since 1998: USDA inspector-helper, quality assurance technician, and chiller operator. Davis worked as a USDA inspector-helper at Pokphand during three periods of time: August 6, 1998, through May 11, 1999; June 22, 1999, through July 19, 1999; and March 27, 2001, through January 25, 2002. The USDA inspector-helper position is covered by the collective bargaining agreement (CBA), entered into by Pokphand and a union, the Retail, Wholesale and Department Store Union, AFL–CIO, effective March 1, 2000. As a USDA inspector-

---

1. The background to this case is more fully set out in the court's order granting in part and denying in part Pokphand's motions for summary judgment.

helper, Davis spent time during her two unpaid 30–minute breaks donning and doffing her clothing and protective gear. She testified that she spent between ten and 15 minutes of each of her breaks putting on, and taking off, clothing and protective gear. She also spent three to four minutes using the washing station before leaving the processing area for her break. After her break, she spent an additional two to three minutes putting her clothing and protective gear back on and an additional 30 seconds washing off.

Davis worked as a quality-assurance technician from September 13, 1999, until March 27, 2001. The quality-assurance-technician position is not covered by the CBA between Pokphand and the union. As a quality-assurance technician, Davis spent 15 to 17 minutes prior to her shift donning the following: a hairnet, a smock, and rubber gloves; a warm jumpsuit given to her by Pokphand because it was cold in the area where she worked; and boots that she wore because she understood that she would not be compensated in the event of an accident if she was not wearing the boots. Before starting her shift, Davis also had to calibrate a scale and thermometers. She also spent five minutes prior to her shift inspecting the shipping area. She testified that she spent between three and four minutes taking her clothing and protective gear off during her breaks and between three and four minutes putting them back on after her breaks.

Davis has been employed by Pokphand as a chiller operator since January 25, 2002. The chiller operator position is covered by the CBA. As a chiller operator, she takes up to ten minutes everyday before her shift to gather charts, to get a new pair of gloves, and to calibrate thermometers prior to her shift.

*Plaintiff Green:* Since starting at Pokphand in 1998, Green has held a number of positions in the debone area, including "pull breasts," "leg quarter pack out," yield technician, and supervisor-in-training. Green has worn the same clothing and protective gear in all of her jobs. All of Green's jobs have been covered by the CBA.

Green dons various articles of clothing and protective gear prior to the start of her shift. Green puts on a hairnet, earplugs, boots, a smock, an apron, cotton gloves, rubber gloves, cutting gloves, arm guards, and plastic sleeves. Green takes time during her breaks to don and doff her clothing and protective gear. She is required to take off her smock and gloves before going on break. It takes Green four to five minutes to take off her smock and gloves.

## II. LEGAL STANDARD

Plaintiffs allege that Pokphand violated the FLSA, as codified at 29 U.S.C.A. §§ 207(a)(1) & 215(a)(2). Section 207(a)(1) provides in relevant part that "no employer shall employ any of his employees ... for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." Section 215(a)(2) provides that it shall be unlawful to violate § 207.

Section 216(b) of the FLSA authorizes a plaintiff seeking relief to bring a "collective action" on behalf of similarly situated persons subject to the requirement that any person who wishes to become a part of the collective action must file a written consent in the court in which such action is brought. 29 U.S.C.A. § 216(b); *Garner v. G.D. Searle Pharms. & Co.,* 802 F.Supp. 418, 420 (M.D.Ala.1991) (Thompson, C.J.). In *Hoffmann–LaRoche, Inc. v. Sperling,* 493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989), the Supreme Court clarified the

district court's authority to facilitate § 216(b) notice. The Court found that early participation by the district court in the notice process serves a number of important goals. Judicial oversight of the contents of notice protects against misleading communications and misuse of the class device, *id.* at 171, 110 S.Ct. at 487, and enables the court to resolve disputes about the contents of the notice before it is sent out, *id.* District court involvement also ensures that all potential plaintiffs receive timely notice of a pending suit, and thus prevents the proliferation of multiple individual suits arising from the same allegedly illegal activity. *Id.* at 169, 110 S.Ct. at 486–87. Also by setting a cut-off date for the receipt of consents, the court can expedite resolution of the action. *Id.* at 171, 110 S.Ct. at 487. For all of these reasons, the Supreme Court concluded that a district court "ha[s] discretion, in appropriate cases, ... [to] facilitat[e] notice to potential plaintiffs" in actions brought under § 216(b). *Id.* at 169, 171, 110 S.Ct. at 486–87. Similarly, the Eleventh Circuit Court of Appeals has stated that "the broad remedial purpose of the Act is best served if the district court is deemed to have the power to give such notice to other potential members of the plaintiff class to 'opt-in' if they so desire." *Dybach v. Florida Dep't of Corr.*, 942 F.2d 1562, 1567 (11th Cir.1991).

Before intervening in the notice procedure, "the district court should satisfy itself that there are other employees of the [employer (1)] who desire to 'opt-in' and [(2)] who are 'similarly situated' with respect to their job requirements and with regard to their pay provisions." *Dybach*, 942 F.2d at 1567–68. To satisfy the "similarly situated" requirement, plaintiffs "need show only that their positions are similar, not identical, to the positions held by the putative class members." *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1217 (11th Cir.2001) (quoting *Grayson v. K*

*Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996)). "The similarly situated requirement of § 216(b) is more elastic and less stringent than the requirements found in Rule 20 (joinder) and Rule 42 (severance). A unified policy, plan, or scheme ... may not be required to satisfy the more liberal 'similarly situated' requirements of § 216(b)." *Id.* at 1219 (internal quotations omitted).

In *Hipp*, the Eleventh Circuit recommended a two-tiered procedure that district courts should use in certifying collective actions under § 216(b). 252 F.3d at 1218.

"The first determination is made at the so-called 'notice stage.' At the notice stage, the district court makes a decision—usually based only on the pleadings and any affidavits which have been submitted—whether notice of the action should be given to potential class members."

"Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class. If the district court 'conditionally certifies' the class, putative class members are given notice and the opportunity to 'opt-in.' The action proceeds as a representative action throughout discovery."

"The second determination is typically precipitated by a motion for 'decertification' by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court de-

certifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives—i.e. the original plaintiffs—proceed to trial on their individual claims."

*Hipp*, 252 F.3d at 1218 (quoting *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213–14 (5th Cir.1995)). The Eleventh Circuit has cautioned, however, that "[b]ased on [its] review of the case law, no representative class has ever survived the second stage of review." *Id.* The district courts have generally applied the *Hipp* two-stage framework. *See, e.g., Stone v. First Union Corp.*, 203 F.R.D. 532, 537 (S.D.Fla.2001) (Gold, J.); *see also Cameron–Grant v. Maxim Healthcare Servs., Inc.*, 347 F.3d 1240, 1242 n. 2 (11th Cir.2003) ("Since *Hipp*, the district courts in our circuit have utilized the two-tiered approach.").

This case is in a slightly different posture than that envisioned in *Hipp* as the first stage, or "notice stage," 252 F.3d at 1218, and thus a more searching standard of review is appropriate. The rationale for the "fairly lenient standard" is that at the early stages of litigation, plaintiffs have not had time to conduct discovery and marshal their best evidence. *See id.* This rationale disappears, however, once plaintiffs have had an opportunity to conduct discovery with respect to defendant's policies and procedures. *White v. Osmose, Inc.*, 204 F.Supp.2d 1309, 1313 n. 2 (M.D.Ala.2002) (Albritton, C.J.); *see also Brooks v. BellSouth Telecommunications, Inc.*, 164 F.R.D. 561, 566 (N.D.Ala.1995) (Blackburn, J.) (analyzing motion for conditional class certification in light of extensive discovery by plaintiff).

In *White*, Chief Judge Albritton wrote that because the plaintiff had had extensive discovery with respect to the defendant's policies, "the court deems it necessary to carefully consider the submissions of the parties with respect to the class allegations." *White*, 204 F.Supp.2d at 1313 n. 2. In this case, plaintiffs similarly have had time to conduct discovery and indeed have filed supplemental evidence in support of their motion to facilitate class notification. The court therefore finds it appropriate to apply a more rigorous standard than that called for by *Hipp* for a typical motion for conditional certification.

## III. DISCUSSION

Plaintiffs "seek to represent all 'similarly situated' employees (current and former) of Defendant who were subject to the uniform policy of not paying overtime compensation."[2] Plaintiffs have thus moved that the court (1) "authorize this case to proceed as a collective action," (2) "order the requested identification of the potential opt-ins," and (3) "authorize the issuance of notice to be mailed to all present and former employees of [d]efendant informing them of their rights to participate as opt-in [p]laintiffs in this action."[3] Plaintiffs do not direct the court's attention to specific evidence in support of their motion; rather, they cite generally to the allegations in their amended complaint, to the deposition testimony of Davis, Green, and another Pokphand employee, Charlie Mae Wright, and to plaintiffs themselves as evidence of similarly situated employees. In opposition, Pokphand argues that plaintiffs have not established that other employees want to opt-in and that the members of the proposed class are similarly situated to plaintiffs themselves.

### A.

The first inquiry is whether plaintiffs have shown that other employees desire to opt-in to this litigation. *Dybach*, 942 F.2d

---

2. Plaintiffs' memorandum in support of motion to facilitate class notice, etc., filed March 14, 2003 (plaintiffs' memo.), p. 1.

3. *Id.* at 2.

at 1567–68. Courts have affirmed the existence of other employees who desire to opt-in on the basis of affidavits of the other employees, *Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358, 362 (M.D.Ala.1999) (Albritton, C.J.) (affidavits from 15 other employees); *White*, 204 F.Supp.2d at 1316 (affidavits from three other employees), consents to join the lawsuit filed by other employees, *Tucker v. Labor Leasing, Inc.*, 872 F.Supp. 941, 947–48 (M.D.Fla.1994) (Schlesinger, J.), and expert evidence on the existence of other similarly-situated employees, *Barron v. Henry County School Sys.*, 242 F.Supp.2d 1096, 1105 (M.D.Ala.2003) (Albritton, C.J.). Courts have been clear, however, that a plaintiff's mere stated belief in the existence of other employees who desire to opt-in is insufficient, *Horne v. United Servs. Auto. Ass'n*, 279 F.Supp.2d 1231, 1236 (M.D.Ala.2003) (Albritton, C.J.), and that "unsupported expectations that additional plaintiffs will subsequently come forward" are also insufficient, *Mackenzie v. Kindred Hosps. East, L.L.C.*, 276 F.Supp.2d 1211, 1220 (M.D.Fla. 2003) (Merryday, J.).

Even under the "fairly lenient standard" called for by *Hipp*, plaintiffs have not met their "burden of demonstrating a reasonable basis for crediting their assertions that aggrieved individuals exist[ ] in the broad class that they propose[ ]." *Haynes v. Singer Co., Inc.*, 696 F.2d 884, 887 (11th Cir.1983). As noted above, plaintiffs must introduce more than their own statements that other potential class members exist. *Horne*, 279 F.Supp.2d at 1236; *Mackenzie*, 276 F.Supp.2d at 1220. Here, plaintiffs' only evidence is the deposition testimony of Davis, who testified that she had spoken to at least 12 employees at Pokphand about the lawsuit, that these employees were unhappy with Pokphand's policies, specifically with respect to break periods, and that these employees indicated that they would join the lawsuit.[4] However, plaintiffs have filed no affidavits or consents from these would-be class members to suggest that they are actually willing to join the suit. Further, Green and Wright both testified that they did not know of any other employees interested in joining the litigation.[5] Thus, the court concludes that plaintiffs have not carried their burden of demonstrating that other plaintiffs exist who desire to opt-in.[6]

### B.

The second inquiry is whether the proposed class consists of similarly situated individuals. The Eleventh Circuit has held that to satisfy the "similarly situated" requirement, plaintiffs "need show only that their positions are similar, not identical, to the positions held by the putative class members." *Hipp*, 252 F.3d at 1217. "A unified policy, plan, or scheme . . . may not be required to satisfy the more liberal 'similarly situated' requirements of

---

4. Plaintiff's evidentiary submissions, etc., filed August 25, 2003 (Plaintiff's evidentiary submissions), exh. A, deposition of Jacqueline Davis, January 31, 2003 (Davis.depo.), pp. 138–40.

5. Plaintiff's evidentiary submissions, exh. B, deposition of Barbara Green, February 6, 2003 (Green depo.), pp. 76–77; Plaintiff's evidentiary submissions, exh. C, deposition of Charlie Mae Wright, January 31, 2003 (Wright depo.), pp. 92–93.

6. Pokphand also argues that plaintiffs have not shown that the potential opt-in plaintiffs have been denied pay in violation of the FLSA and therefore class notice should not be authorized. Defendant's opposition, etc., filed April 18, 2003, pp. 3–9. Pokphand raises a number of arguments as to why the potential opt-in plaintiffs' claims would not have merit, including arguments it raised in its motions for summary judgment. However, the class-notification stage is not the time to resolve the merits of an FLSA suit. *Garner*, 802 F.Supp. at 423 n. 4.

§ 216(b))." *Id.* at 1219 (internal quotations omitted).

The cases from the district courts show a variety of approaches to applying the "similarly situated" requirement. Some cases have focused on the similarity between job responsibilities and pay provisions of plaintiffs and those of the proposed class. *See, e.g., Bradford v. Bed Bath & Beyond, Inc.,* 184 F.Supp.2d 1342, 1345 (N.D.Ga.2002) (Story, J.) ("The only determinative issue is whether Plaintiffs' job duties were similar."); *Tucker,* 872 F.Supp. at 948. Other decisions, most notably a series of opinions authored by Chief Judge Albritton of this court, have looked more closely for evidence of a factual or legal nexus between plaintiffs' claims and the claims of the proposed class. *See, e.g., Barron,* 242 F.Supp.2d at 1103. Finally, one court has employed a multifactor approach. *See Stone,* 203 F.R.D. at 542–43. Because the court concludes that plaintiffs have not met their burden of demonstrating that there are other Pokphand employees who desire to opt-in, it need not commit to one approach to resolve whether the would-be opt-in plaintiffs are similarly situated.

The court does note, however, that it is skeptical about whether plaintiffs could meet their burden of establishing that the proposed class is similarly situated. First, plaintiffs have articulated almost no limit to the definition of their proposed class, including "all 'similarly situated' employees (current and former) of Defendant who were subject to the uniform policy of not paying overtime compensation." [7] Such a broad class almost inevitably would include employees with very different job titles and responsibilities, both of which are relevant factors in making the "similarly situated" determination. *See Mackenzie,* 276 F.Supp.2d at 1221 (identifying "the overbroad class of individuals identified by plaintiff as comprising the potential class action" as a factor in denying conditional class certification).

Second, the court has almost no information about the job titles or duties of the Pokphand employees whom plaintiffs urge as potential class members. In *Tucker,* the named plaintiffs sought the court's approval of notice to a class of employees located at a different job site from their own, but the named plaintiffs had no evidence of the existence of potential opt-in employees other than their own statements and no evidence as to whether those employees were similarly situated with respect to positions, responsibilities, or pay provisions. 872 F.Supp. at 948. The court withheld its approval of class notification because plaintiffs had failed to provide any evidence regarding the potential opt-in employees' job requirements or pay provisions. *Id.* This case is analogous. Plaintiffs seek approval of class notice without calling the court's attention to any evidence of the ways in which their and the proposed class members' jobs are similar.

## IV. CONCLUSION

For the reasons discussed above, the court exercises its discretion not to certify conditionally a collective action in this matter. The court is aware of the broad remedial goal of the FLSA, *see Garner,* 802 F.Supp. at 422, and aware of the relatively low threshold for conditional class approval set by *Hipp.* However, plaintiffs have not met their burden of establishing the existence of fellow Pokphand employees who desire to opt-in and are similarly situated. Moreover, if there are such employees, they are not precluded by this decision from bringing their own actions.

For the above reasons, it is ORDERED that the plaintiffs' motion to facilitate class

---

7. Plaintiffs' memo. at 1.

notice pursuant to 29 U.S.C. § 216(b), filed on March 14, 2003 (Doc. No. 24), is denied.