Tammy KERCE, on behalf of herself and all those similarly situated who consent to representation, Plaintiffs,

v.

WEST TELEMARKETING CORPORATION and West Telemarketing, LP, Defendants.

Civil Action No. CV207–081.

United States District Court, S.D. Georgia, Brunswick Division.

May 21, 2008.

Mark David Johnson, James L. Roberts, IV, Gilbert, Harrell, Sumerford & Martin, PC, Brunswick, GA, C. Lance Gould, Roman A. Shaul, Beasley, Allen, Crow, Methvin, Portis & Miles, PC, Montgomery, AL, for Plaintiffs.

Asher B. Griffin, Julie A. Springer, Scott, Douglass & McConnico, LLP, Austin, TX, Terry L. Readdick, Brown, Readdick, Bumgartner, Carter, Strickland, Brunswick, GA, for Defendants.

## *ORDER*

ANTHONY A. ALAIMO, District Judge.

Plaintiff, Tammy Kerce, filed this action against Defendants, West Telemarketing Corporation and West Telemarketing, LP

(collectively, "West"), alleging violations of the Fair Labor Standards Act ("FLSA"), codified at 29 U.S.C. §§ 201–219.

Presently before the Court are Kerce's motion for conditional certification and to facilitate notice to potential class members, and Kerce's motion to strike certain declarations submitted by West. Because Kerce's claims are similar to those of the putative class and because there is evidence that others wish to opt-in, the motion to certify will be **GRANTED.** Because there is no record of abusive communications to the potential class members by Defendants, Plaintiff's motion to strike will be **DENIED.**

## BACKGROUND

West operates a telemarketing service, with 30,000 agents who work from their homes, which are located throughout the United States. Defendants are incorporated and organized under the laws of Delaware, and their business headquarters are in Nebraska. Home agents process customer-initiated contacts involving direct sales and customer service. Particularly, home agents answer calls from West's clients, which include, among others, home shopping television networks and the business supply store chain, Office Depot.

According to Kerce, she worked for West as a home agent from December 2003 until July 2005, and began working in the same capacity again in May 2007.[1] Kerce avers that she and thousands of other home agents were mischaracterized by West as independent contractors rather than employees. Kerce asserts that West failed to pay the minimum wage and over-

time compensation to its home agents, as required by law.

According to Kerce's complaint, on the days that she worked, she was required to log on to West's website to have West's customer calls routed to her home phone. West provided set times from which Kerce could work, and West required Kerce to remain at her computer for her entire shift, even if no one called. If Kerce received no calls, she was not compensated by West at all. Kerce alleged that she had no control of the number of calls routed to her by West. According to Plaintiff, West controlled the scripted answers that she had to read to the customers who called.

Kerce avers that she completed required training for West from her home in Brunswick, Georgia, and that she received no compensation for this training. Kerce also alleges that she received less than the minimum wage for work she did when she was paid by West, in part because West paid her by the minute instead of by the hour. More specifically, Kerce urges that it was improper for West to pay her per minute for actual "talk time," instead of per hour according to the total time she was logged on to West's system to receive calls.

Kerce seeks to represent all similarly situated current and former West home agents, who were subject to the same uniform pay policies, during the three years prior to filing of the complaint. Since Plaintiff filed her complaint, nineteen home agents have filed consents to opt-in to this litigation.

---

1. West concedes that Kerce obtained her West home agent certification in 2003, but notes that this time period is outside the statute of limitations. Ordinarily, the limitations period is two years for FLSA claims, but if the violations are found to be willful, the limitations period is extended to three years. 29

U.S.C. § 255(a). On June 26, 2007, Plaintiff filed her complaint. Consequently, West asserts that the statute of limitations has run as to any work Kerce performed for West prior to June 26, 2004, and may have run as to any work performed before June 26, 2005.

### STANDARD OF REVIEW ON A MOTION TO CONDITIONALLY CERTIFY

· Section 216(b) of the FLSA indicates a policy choice in favor of judicial economy in resolving similar wage and hour disputes against a common employer. "The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity." *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 170, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989).

■ In considering a motion to conditionally certify the class in a wage and hour dispute, the Court does not reach the merits of the case. Instead, the Court follows a two-step process. First, during the "notice" stage, the Court determines whether it should conditionally certify the class and permit notice to be issued to each of the putative class members. *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 952–54 (11th Cir.2007). Early certification protects the class because it allows them to opt-in to the lawsuit and stop the statute of limitations from running as to their claims. At the notice stage, the Court applies a "fairly lenient" standard when deciding whether certification is appropriate. *Id.* at 953.

For notice to issue, Plaintiff must show that "there are other employees of the ... employer who [may] desire to 'opt-in' and that these other employees are 'similarly situated' with respect to their job requirements and with regard to their pay provisions." *Dybach v. State of Fla. Dep't of Corr.*, 942 F.2d 1562, 1567–68 (11th Cir. 1991).

■ Typically, courts presented with motions to conditionally certify a class under § 216(b) grant those motions and allow the case to proceed to discovery. *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1217 (11th Cir.2001); *Davis v. Charoen Pokphand (USA), Inc.*, 303 F.Supp.2d 1272, 1276 (M.D.Ala.2004)(noting that, during the "early stages of the litigation, plaintiffs have not had time to conduct discovery and marshal their best evidence.").

■ The "similarly situated" requirement is "more elastic and less stringent than the requirements found in Rule 20 (joinder) and Rule 42 (severance) ... [and] a unified policy, plan, or scheme of discrimination *may not* be required to satisfy the more liberal 'similarly situated' requirement of § 216(b)...." *Grayson v. K Mart*, 79 F.3d 1086, 1095 (11th Cir.1996)(emphasis added). Where a plaintiff has demonstrated a reasonable basis for the allegations of the complaint by filing declarations and consents from class members, a collective action is authorized, and notice should be issued. *Id.* at 1097.

■ The second stage of the certification decision is precipitated by a motion for decertification by Defendants. After discovery has been completed, upon Defendants' motion for decertification, the Court is able to undertake a more rigorous factual determination concerning whether the named plaintiff is similarly situated to the class. *Anderson*, 488 F.3d at 953.

### DISCUSSION

Kerce contends that her evidence shows that West did not pay its home agents the minimum wage for all hours worked.

Kerce relates that she is similarly situated to other home agents because West had a uniform policy of not paying for training time. Moreover, Plaintiff contends that Defendants' method of paying by the minute for "call time" is a uniform practice, and that this policy frequently results in payments that are below the federal mini-

mum wage because call center demand is variable, and often unpredictable.

West faults Kerce for failing to offer sufficient evidence about the job requirements and the pay provisions of the potential class members. *Dybach,* 942 F.2d at 1567–68; *Saxton v. Title Max of Ala., Inc.,* 431 F.Supp.2d 1185, 1188 (N.D.Ala.2006) (court should compare named plaintiff with opt-in declarations). West maintains that home agents provide services on dozens of different projects for different clients, pursuant to various compensation formulas. According to West, home agents were required to obtain certifications that varied depending on the particular projects and clients served. Home agents could choose, to obtain multiple certifications, and during the time period relevant to this lawsuit, West offered about thirty different certifications.

West has also stated that home agents were compensated differently depending on their certification. West alleges it paid some agents by the minute for the time they were processing calls, like Kerce. West asserts that it paid other agents the greater of a per minute rate or a guaranteed hourly rate.[2] *United States v. Klinghoffer Bros. Realty Corp.,* 285 F.2d 487, 490 (2d Cir.1960)(authorizing nonstandard compensation schemes as long as wage requirements are satisfied when looking at the work week as a whole).

## I. Similarity of Kerce's Claims to Other Class Members' Claims

### A. Job Requirements

■ The parties agree that the FLSA does not apply to independent contractors. *Padjuran v. Aventura Limousine &* *Transp. Serv., Inc.,* 500 F.Supp.2d 1359, 1361–62 (S.D.Fla.2007). West argues that when a case concerns whether a defendant classified persons properly as independent contractors instead of employees, the plaintiff's evidence of "job requirements" must address the independent contractor classification issue. West contends that Kerce's evidence is lacking in this respect. The Court agrees with West that the classification issue is of primary importance in this case, and will proceed to discuss the multi-factor analysis of that issue as described by the case law and the parties' briefs. Thereafter, the Court will consider two other significant "job requirements" issues raised by the parties, training and document review, as well as other criticisms raised by West.

*i. "Independent Contractor" versus "Employee" Analysis*

■ The FLSA "defines the verb 'employ' expansively to mean 'suffer or permit to work.'" *Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 326, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992) (quoting 29 U.S.C. § 203(g)).

The Supreme Court has emphasized that the "striking breadth" of this ... definition "stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles." ... Thus, in determining whether an individual is covered by the FLSA, "our inquiry is not limited by any contractual terminology or by traditional common law concepts of 'employee' or 'independent contractor.'"

*Henderson v. Inter–Chem Coal Co.,* 41 F.3d 567, 570 (10th Cir.1994) (internal cita-

---

**2.** Kerce concedes that she is not seeking to represent any home agents who were guaranteed an hourly wage above the federal minimum wage and who received training pay.

Yet, West's failure to compensate workers in this manner makes Kerce similarly situated to the home agents, and she seeks to represent them.

tion omitted) (as modified by *Henderson*, 1994 U.S.App. LEXIS 34140 (10th Cir. Dec. 5, 1994)).

■■■■ To determine whether a person is an independent contractor or employee, courts use the "economic realities" test. *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 726–27, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947). The crucial consideration is whether the worker "is economically dependent on the business to which he renders service . . . or is, as a matter of economic fact, in business for himself." *Henderson*, 41 F.3d at 570 (citing *Bartels v. Birmingham*, 332 U.S. 126, 130, 67 S.Ct. 1547, 91 L.Ed. 1947 (1947)).

> Five considerations have been set out as aids to making the determination of dependence, vel non. They are: degree of control, opportunities for profit or loss, investment in facilities, permanency of relation, and skill required. No one of these considerations can become the final determinant, nor can the collective answers to all of the inquiries produce a resolution which submerges consideration of the dominant factor—economic dependence.

*Usery v. Pilgrim Equip. Co., Inc.*, 527 F.2d 1308, 1311 (5th Cir.1976).[3] As a sixth factor, courts consider "the extent to which the service rendered is an integral part of the alleged employer's business." *Sec'y of Labor v. Lauritzen*, 835 F.2d 1529, 1535 (7th Cir.1987); *Freund v. Hi–Tech Satellite, Inc.*, 185 Fed.Appx. 782, 783 (11th Cir.2006).

Regarding the first factor, Kerce alleges that West's business model requires that it monitor and change home agents' work schedules to meet their clients' needs. Plaintiff cites to the 2005 Securities and Exchange Commission ("SEC") 10–K filing by Defendants' parent company, West Corporation, as illustrating the level of control West has over home agents. The 10–K suggests that Defendants' control over home agents, and how they do their jobs, is considerable.[4]

West Corporation's 10–K suggests that West monitors trends hourly for each client to determine its staffing needs, using historical data to forecast call volume. West provides reports to its clients that measure the home agents' performance in several areas, including average handle time, call volume, average speed of answer, sales per hour, rate of abandonment, quota attainment, and order conversion percentages.[5]

Binding precedent also casts doubt on West's assertion that home agents' control over less important, ordinary tasks makes

**3.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

**4.** According to a declaration submitted by West Corporation President and Chief Operating Officer Nancee Berger, the full SEC 10–K report contains information relating to other West subsidiaries, and certain information relied on by Kerce actually referred to regular West telemarketing employees, who worked in West's offices, not home agents. Kerce does not dispute Berger's representations, but does note that Berger does not deny that

other cited portions of the 10–K are relevant to West's home agents. Accordingly, the Court has excised any reference to extraneous or irrelevant material as identified in Berger's declaration. Dkt. No. 41, Ex. B., Berger Aff. at ¶¶ 6–7.

**5.** As West notes, there are many examples of control that courts consider when making the final determination as to the independent contractor issue. *See Baker v. Flint Eng'g & Constr. Corp.*, 137 F.3d 1436, 1441 (10th Cir. 1998); *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 75 (2d Cir.2003)(citing such factors as control over schedule and hours worked, the degree of supervision, and regulation of the manner in which the work is performed).

them independent contractors. In *Usery,* the Fifth Circuit explained: "the operators are totally dependent upon Pilgrim to provide direction or control in every major aspect of their work ... the lack of supervision over minor regular tasks cannot be bootstrapped into an appearance of real independence." 527 F.2d at 1312 (sixty laundry workers were employees even though they set their own hours).

In addition, there is some evidence that the second factor, the home agents' opportunity for profit or loss depending on their managerial skill, supports Plaintiff's case because the agents respond to, and do not initiate, calls that Defendants' clients generate. If what Plaintiff alleges is true, home agents' training is specific and they must follow detailed scripts in answering calls. For example, there has been no indication that home agents were in a position to increase their pay by getting clients to "upgrade" their products or services. Also, there is no dispute that agents have no control over call volume. As in *Usery,* there was no real opportunity for the home agents to suffer a loss as home agents. *Id.* at 1313. "Routine work which requires industry and efficiency is not indicative of independence and nonemployee status." *Id.* at 1314.

Plaintiff asserts the third factor is in her favor as well because, while home agents must own their own computer with internet access and have a home phone, it is safe to assume these are standard items in most U.S. homes today, not tools specially purchased for business. Indeed, it does not appear that significant special capital investments were required of West's home agents.

The fourth factor looks to the permanency of relation between the parties. With respect to that consideration, West has conceded that during the time relevant to this dispute, it required home agents to complete various "certification programs" without pay before they began taking calls on West's behalf. Plaintiff reported that it took her 100 hours to obtain her initial certification, and that she was required to complete supplemental training thereafter without pay. Kerce avers that she spent an additional 80 hours doing supplemental training.

West denies that Kerce's training was that extensive, but does not dispute the fact that home agents were required to complete unpaid initial and ongoing training. Therefore, there is some evidence that significant training was involved in West's home agent program. If what Kerce says is true, it would suggest some dedication, and an intent to establish an ongoing working relationship of some length, for a home agent to complete all required training. There is no evidence of record that home agents' time of service to West was fleeting.

The fifth factor identified by the *Usery* court concerns the level of skill required. Kerce posits that there is no evidence of any "special skills" required beyond the training provided by West, and West offers no suggestion to the contrary.

As to the sixth factor, Plaintiff urges that home agents are vital to Defendants' business, which belies Defendants' claim that they are only independent contractors. According to Kerce, West would not delegate such important functions without exerting a great deal of control and influence over home agents and how they do their jobs. In support of Plaintiff's argument, she reports that, in 2005, 57% of Defendants' revenue came from communications services provided by home agents.[6]

---

6. In October 2006, Defendants' parent corpo-    ration, West Corporation, was taken private

■ In sum, all of these factors lend credence to the notion that the home agents were economically dependent on West, and none suggest that the members of the proposed class were in business for themselves. *See Donovan v. DialAmerica Mktg., Inc.,* 757 F.2d 1376, 1385–86 (3d Cir.1985). The Court concludes that Plaintiff has made a sufficient showing on this issue to proceed to discovery.

*ii. Unpaid Training Time*

■ As mentioned above, one of the main elements of similarity with respect to the home agents' job requirements is West's uniform policy that all home agents must obtain initial certifications that require significant training. Kerce asserts that entitlement to compensation for initial and ongoing training can be determined on a class-wide basis. Without elaboration, West asserts that whether training time is compensable is a factual inquiry that varies depending on the certification obtained.

Assuming, *arguendo,* that Kerce was an employee, West disputes that she would be entitled to training pay. Persons who "work for their own advantage" are not "suffer[ed] or permit[ted] to work." *Walling v. Portland Terminal Co.,* 330 U.S. 148, 152, 67 S.Ct. 639, 91 L.Ed. 809 (1947). A company should not be penalized for providing free instruction that could benefit a trainee, unless it receives some "immediate advantage" as a result of the training. *Id.* at 153, 67 S.Ct. 639; *see also Donovan v. Am. Airlines, Inc.,* 686 F.2d 267, 271–73 (5th Cir.1982).

> Under the regulations issued by the Department of Labor pertaining to hours worked, 29 C.F.R. § 785.1, et seq., training programs need not be counted as working time if (1) attendance is voluntary; (2) the course is not directly related to the employee's job; (3) attendance is outside of regular working hours; and (4) the employee does not perform productive work during attendance. *See* 29 C.F.R. § 785.27.

*Price v. Tampa Elec. Co.,* 806 F.2d 1551, 1552 (11th Cir.1987).

While the parties dispute whether training time is compensable, it is undisputed that none of the class members were paid for training time. It would be premature for the Court to resolve whether such time is compensable at this stage of the proceedings, but the matter could be resolved on a class-wide basis after discovery has concluded.

*iii. Unpaid Document Review Work*

■ There is evidence that Kerce and other home agents shared other relevant job requirements, like significant off-the-clock document review duties for West. Kerce asserts that she spent up to three hours each day reviewing routine materials, like emails, from West, for which she was not compensated. West rejoins this claim is inflated because she averaged only 9.5 hours of log-in time per week, which makes her dissimilar from other potential class members. As a result, West insists that damages can only be proven by individualized testimony.

Defendants have offered declarations from sixteen home agents, which indicate that these individuals do not wish to pursue this litigation. Nonetheless, the declarations provided by West generally support Kerce's claim that she had to review materials from West without pay, in that

via a recapitalization plan. Thereafter, it was de listed from the NASDAQ stock exchange. In November 2007, a reorganized subsidiary of West Corporation reclassified home agents as employees rather than independent contractors and began paying agents for training time. Dkt. No. 38 at Ex. B; Dkt. No. 47, Ex. 1 at 2.

they suggest that this practice was widespread.

West's declarations indicated that off-the-clock review of materials from West was not an every day occurrence for those sixteen home agents, and when it did occur it did not take more than thirty minutes each day to complete. Still, the evidence produced by West supports the notion that home agents performed significant document review for West without compensation. While others may not claim the same extent of off-the-clock work as Kerce, that does not preclude class treatment of the common issue of liability for this practice that would apply to all those who opt-in to this litigation.

The parties' opposing contentions about the home agents' off-the-clock review time lack sufficient support in the record to reach any firm conclusion without additional discovery. As many courts have explained, these inquiries are merits considerations that the court should not resolve at this stage of the proceedings. *See Pendlebury v. Starbucks Coffee Co.*, No. 04–CV–80521, 2005 WL 84500, at *3–4, 2005 U.S. Dist. LEXIS 574, at *10–12 (S.D.Fla. Jan. 3, 2005) (collecting cases).

### iv. West's Other Criticisms

Admittedly, West cites to decisions that are rather dismissive of the lack of detailed evidence presented by plaintiffs in proposed FLSA class actions. Yet, many of those cases are from outside the Eleventh Circuit, and those courts may approach the certification process differently than courts in the this Circuit. To the extent those decisions recognize the framework used in the Eleventh Circuit, the decisions cited by West either addressed cases involving advanced discovery, misread the standard to be applied at the notice stage and delved into the merits inadvertently, or involved dissimilar circumstances where it was plain that there was insufficient evidence that the named plaintiff was similarly situated to the proposed class.

Principally, West relies on two unpublished decisions from district courts in New York and Illinois in support of its position. The Court concludes that those decisions are either inconsistent with the Eleventh Circuit two-step framework, as described in *Anderson*, or are distinguishable.

In *Levinson v. Primedia, Inc.*, the court required the plaintiff to submit evidence for which discovery was necessary prior to certifying the class. In this Circuit, conditional certification takes place early in the litigation before a plaintiff has access to such proof. No. 02 Civ. 2222(CBM), 2003 WL 22533428, at *1–2, 2003 U.S. Dist. LEXIS 20010 at *3–6 (S.D.N.Y. Nov. 6, 2003). In *Pfaahler v. Consultants for Architects, Inc.*, an architect sued a design referral service, and the court rejected class certification based on insufficient proof of similarity. But in that case, the plaintiff's deposition had already been taken and other discovery had taken place as well. No. 99 C 6700, 2000 WL 198888, at *2–3, 2000 U.S. Dist. LEXIS 1772 at *4–9 (N.D.Ill. Feb. 8, 2000).

West faults Kerce for failing to show that she was similarly situated with the other agents on the independent contractor issue, citing to *Davis v. Charoen Pokphand (USA), Inc.*, 303 F.Supp.2d 1272, 1278 (M.D.Ala.2004). In *Davis*, a case involving advanced discovery, the court concluded that including employees with different job titles and responsibilities as being subject to the same "uniform" policy of failure to pay overtime compensation, was too broad of a proposed class. *Id.*

■ Here, by contrast, the members of the proposed class have the same job title, and the same basic job duties, in that they all field calls from West's customers. While some are dedicated to taking calls from home shopping networks, and others provide call support to Office Depot, these job differences are not material to the classwide issues described by Kerce. There has been no explanation as to why the subject matter of the phone calls should make training time not compensable, or more broadly, why this difference would impact the proper classification of the home agent as an employee or independent contractor. Specifically, whether log-in time and work material "review time" are compensable appear to be common issues amenable to uniform determination based on similar evidence across the class.

West has not explained how the superficial differences in job duties that it has highlighted would cause some agents to be considered independent contractors, while others might be employees. West's position is undercut by the fact that West classified all home agents as independent contractors itself, indicating that it believed the agents could be classified in a like fashion despite their differences in clients served and certifications obtained.

West also notes that its contract specified that home agents were independent contractors, and that it allowed agents to provide services to West's competitors if they wished. Yet, neither fact is dispositive. *DialAmerica Marketing, Inc.*, 757 F.2d at 1384–85; *Henderson*, 41 F.3d at 570.

In sum, Kerce has made an initial showing that she is similarly situated to the proposed class with respect to the job requirements of the class. As is relevant here, there is some evidence that a great number of home agents were not paid for all hours they were logged in to West's system to receive calls. Other evidence suggests that home agents reviewed materials from West off-the-clock as a matter of course, and there is no dispute that West did not pay home agents for initial or ongoing training. If the class prevails in showing that they were classified improperly as independent contractors, this evidence could demonstrate violations of the minimum wage and overtime provisions of the FLSA.

**B. Pay Provisions**

■ West maintains that Kerce cannot show that she is similarly situated to the proposed class with respect to pay provisions. *Dybach*, 942 F.2d at 1567–68. However, there is no evidence to contradict Plaintiffs detailed allegations that home agents were paid per minute for "talk time," rather than by the hour for all time logged on to West's system. The declarations West submitted do not reveal that any of those home agents are paid in any fashion other than by the minute for "talk time."

Assuming, for the sake of argument, that West did use somewhat different compensation schemes depending on which certifications were obtained by home agents, that fact does not change the analysis. As one court explained, such variation is immaterial, because West admits that it paid no training time to any home agent, and that it paid no overtime compensation either. *Bradford v. Bed Bath & Beyond, Inc.*, 184 F.Supp.2d 1342, 1351 (N.D.Ga. 2002). Rather, the common issues with respect to the class will be the class members' entitlement to compensation for time spent in training, doing document review, and while logged on. to West's system to receive calls.

If Plaintiffs prevail on the common issues, the Court will attempt to compute

the amount due to any particular Plaintiff by use of common or set formula, depending on their compensation level or certification(s) obtained. At worst, individualized damages hearings may be necessary. However, this fact does not defeat certification and class treatment of the common issues. *Id.*

Utilizing the class device to decide the common issues promotes judicial efficiency and consistency. Moreover, it is likely that individual actions would be discouraged by the relatively modest damages that any given Plaintiff suffered. Such an approach is common in class actions maintained under Rule 23, and the remedial purposes of the FLSA allows collective actions to proceed where devices under Rules 23 and 20 would be unavailable. *Cooper v. Pacific Life Ins. Co.*, 458 F.Supp.2d 1368, 1376–77 (S.D.Ga.2006); *Grayson*, 79 F.3d at 1096.

Contrary to West's representation, the Court finds that Kerce has made a threshold showing of similarity with respect to the central issues of the lawsuit. The Court agrees that, ultimately, the Court must consider how the parties actually behaved to determine what the economic realities of the situation were. After discovery has been completed, Defendants will have an opportunity to prove their assertion that the economic realities of the companies' relationships with home agents showed that they were independent contractors. Yet, the idea that any individual inquiry prevents certification in a FLSA context has been rejected. Class members' claims need only be similar, not identical. *Grayson*, 79 F.3d at 1096.[7] At this stage of the proceedings, Plaintiff's show-ing suffices to conditionally certify the class.

## II. Interest in the Litigation Among Class Members

Furthermore, West faults Kerce for not getting enough opt-in plaintiffs to demonstrate sufficient interest in pursuing this lawsuit. West asserts that the showing of desire is a relative question based on the size of the proposed class and any contrary showing of no desire offered by the defendant. *Rodgers v. CVS Pharmacy, Inc.*, No. 8:05–CV770T–27MSS, 2006 WL 752831, at *2–4, 2006 U.S. Dist. LEXIS 23272 at *7–11 (M.D.Fla. Mar. 22, 2006).

In this case, nineteen home agents have opted-in to this litigation. Meanwhile, West has filed declarations from sixteen home agents indicating no interest in pursuing the litigation. As Kerce notes, the declarations submitted by West do not show that Kerce is not similarly situated to the proposed class. Plaintiff submits that she has shown sufficient interest in this action by opt-in Plaintiffs to warrant conditional certification, asserting that there is no precise formula to determine whether sufficient interest exists. *Bell v. Mynt Entm't, LLC.*, 223 F.R.D. 680, 683 (S.D.Fla.2004); *Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358, 362–63 (M.D.Ala. 1999).

The Court agrees with Plaintiff, and finds *Rodgers* to be readily distinguishable. The plaintiffs in that case offered less evidence than Plaintiff has submitted in the instant case, and *Rodgers* involved a larger potential class, consisting of 250,000 pharmacy employees. There, the three declarations offered were not sufficiently detailed to "engage" the defendant's evi-

---

7. The Court notes that a number of federal decisions have found home workers to be employees rather than independent contractors. *See, e.g., DialAmerica Mktg., Inc.*, 757 F.2d at 1384 n. 10 (collecting cases); *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 32–33, 81 S.Ct. 933, 6 L.Ed.2d 100 (1961).

dence, which demonstrated a lack of interest in a collective action. *See Grayson*, 79 F.3d at 1099 n. 17 (where Defendants offer contradictory evidence, class should be certified if the plaintiffs "successfully engage" the defendant's proof). Moreover, the Court presumes that CVS pharmacy employees would be easier for class counsel to locate than West's home agents.

Relatedly, West argues that the Court's scrutiny should be heightened because the proposed class is large, citing *Freeman v. Wal–Mart Stores, Inc.*, 256 F.Supp.2d 941, 945 (W.D.Ark.2003). The Court is not inclined to follow *Freeman*. That decision expresses doubt about the appropriate standard, and demonstrates reluctance to follow the two-step method endorsed by the Eleventh Circuit by imposing a heavy burden before conditional certification and discovery take place. *Id.* However, all Plaintiff must demonstrate is that some class members exist who are similarly situated, and who may desire to opt in to the litigation. Kerce's showing is more than sufficient to discharge her burden, and West's arguments for even more evidence at this stage is inconsistent with the broad remedial purposes of the Act. *See, e.g., Reab v. Elec. Arts, Inc.*, 214 F.R.D. 623, 629 (D.Colo.2002).

Contrary to West's contention, the Court concludes that certification does not place West in an "untenable" position. Many of West's arguments are merit - based that it is free to raise after discovery. This approach is consistent with the Eleventh Circuit framework for conditional class certification in FLSA cases. Other "practical" differences West points to regarding the home agents are either immaterial, or insufficiently developed at this stage of the proceedings. Conditional certification is proper based on detailed allegations by the plaintiff plus admissions by the employer and other documentary evidence. *Anderson*, 488 F.3d at 952. These guideposts are satisfied in the instant litigation, and the Court will conditionally certify Kerce's proposed class.

## IV. Motion to Strike

■ Plaintiff has filed a separate motion seeking to strike the declarations submitted by Defendants from sixteen home agents who have stated that they have no interest in pursuing this litigation. Kerce submits that these declarations should be struck because West's contact with members of the putative class was unauthorized, and possibly coercive or misleading. According to Plaintiff, contact with putative class members by an employer, or one who has an ongoing business relationship with potential class members, can be inherently coercive. *Kleiner v. First Nat'l Bank*, 751 F.2d 1193, 1202 (11th Cir.1985)(restrictions proper where bank undertook an abusive communications campaign to putative class of borrowers).

Defendants rejoin that Plaintiff's motion is improper because, prior to a decision on the conditional certification question, each side has the right to communicate with potential class members. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981); *Maddox v. Knowledge Learning Corp.*, 499 F.Supp.2d 1338, 1342–43 (N.D.Ga.2007).

The Court concludes that there is nothing improper about West gathering facts to support its defense. While it is true that, in appropriate circumstances, the Court may limit the parties' communications with putative class members, there has been no showing that any restrictions are warranted here. *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 171, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989); *Gulf Oil Co.*, 452 U.S. at 100–01, 101 S.Ct. 2193.

Before the Court restricts West's free speech rights, and its right to defend itself

in this litigation, Kerce must offer clear record evidence of abusive communications, which she has failed to do. *Id.* at 101, 101 S.Ct. 2193. "[T]he mere possibility of abuses does not justify the routine adoption of a communications ban ... [and o]ther less burdensome remedies may be appropriate." *Id.* at 104, 101 S.Ct. 2193. There is no evidence that West misrepresented facts about the lawsuit, discouraged participation in the suit, or undermined the class' confidence in, or cooperation with, class counsel. *Cox Nuclear Med. v. Gold Cup Coffee,* 214 F.R.D. 696, 698 (S.D.Ala. 2003). Plaintiff's motion to strike is without support.

## CONCLUSION

For the reasons described above, Plaintiff's motion for conditional certification is **GRANTED,** and Plaintiff's motion to strike Defendants' declarations is **DENIED.** Dkt. Nos. 37 & 50, respectively.

In accordance with the consent order entered in this action on December 10, 2007, the proposed notice shall be submitted to the Court within fourteen days of the date of this order. If the parties fail to agree on the proposed notice, West may object to the scope or content of the notice within ten days of Kerce's submission.

Also within fourteen days of the date of this order, West shall produce to Kerce a computer-generated list of the names and addresses of all current and former home agents who worked for West during the three years preceding the commencement of this action.

**SO ORDERED.**